CLOSED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
MAY 23 2006
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

MORGAN JONES,

    Petitioner,

v.

CIVIL CASE NO. 05-CV-70897-DT
HONORABLE GERALD E. ROSEN

BARRY DAVIS,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I.    Introduction

Petitioner Morgan Jones, a state prisoner presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] Petitioner challenges his second-degree murder, armed robbery, conspiracy, felony firearm, and felon in possession convictions which were imposed following a jury trial in the Wayne County Circuit Court in 2001. Petitioner was sentenced to concurrent terms of life imprisonment, 45-75 years imprisonment, and 3-10 years imprisonment, and a consecutive term of two years imprisonment, on those convictions. In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel. For the reasons stated below, the petition for writ of habeas corpus is denied.

---

[1] At the time he instituted this action, Petitioner was confined at the Newberry Correctional Facility in Newberry, Michigan where Respondent is the warden.

## II. Facts and Procedural History

Petitioner's convictions stem from the robbery and shooting death of Ronald Lasure in Detroit, Michigan on October 17, 2000. The Michigan Court of Appeals set forth the basic facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Lasure and several friends occupied a house at 8515 Strathmoor in Detroit from which they sold drugs. On the afternoon of the shooting, while Lasure was at his mother's house, Lasure's friend Frederick Abbott overheard another friend, Gerald Webb, talking to Jones, who was not a regular visitor to the house, about the fact that Lasure was carrying two or three thousand dollars. Abbott heard Webb tell Jones that although Webb himself could not rob Lasure, because they knew each other, Jones could do it, because Lasure did not know him. Although Abbott saw that Webb had a .38 special handgun, he did not warn Lasure about this conversation because he "thought they were just joking around." Abbott recalled Webb making about three calls to Lasure's mother's house after this conversation, and eventually Lasure came to the house on Strathmoor.
>
> At around 10:30 that night, Markeith Howard and Nicola Phillip, who lived on Strathmoor and knew Lasure, were driving by Lasure's house. Phillip, the passenger, described seeing two men standing on the sidewalk, one of whom had his arm outstretched toward the other. She saw that one of them had a handgun. As she got closer, she recognized that the two men were Jones and Lasure, and saw that Lasure's Bronco was parked in front of the house. She also saw Abbott and Webb standing nearby. Howard parked the car in front of the neighbor's house, got out, and asked what was going on. Phillip heard Jones tell Lasure three times to drop his money, which Lasure did. Jones then told Lasure to drop his keys, which Lasure did not. Phillip saw them begin tussling, then Lasure broke away and ran to his Bronco, but could not get in. Lasure then ran behind Howard, who was standing behind the open door of his car. Howard told Jones, "Morgan, stop. Just go on. Go on." As Jones started walking away, Lasure went back to his Bronco and got in. Phillip then saw Jones run to the driver's side of the Bronco and heard him shoot twice. Howard and Abbott also testified that Jones fired two shots at "point blank range" and shattered Lasure's driver's side window.
>
> Phillip saw Lasure drive south down Strathmoor onto Mackenzie, the nearest cross-street south of the incident, and Phillip and Howard, whose car was parked facing the opposite direction, drove north down Strathmoor and turned east on Joy Road, the nearest cross-street north of the incident, to see if Lasure was all right.

2

They looked down Mark Twain, which ran parallel to Strathmoor one block east, and saw that a tree had been knocked down, but could not see Lasure, so they drove one block further to Freeland Road, on which they turned south. On Freeland Road, Howard saw a friend who told them that someone had been shot on Mark Twain. Howard got out of the car and walked to Mark Twain while Phillip drove the car to her nearby house before walking back to join him. There the two saw Lasure, shot and lying on the grass, and saw that his Bronco had crashed into the tree. Abbott was also at the scene of the crash, having parked his car on Joy Road and walked down Mark Twain.

By this time, the Detroit Police and paramedics had arrived. As the paramedics were tending to Lasure, Lasure told Officer Abdul Shabazz, "Morgan shot me." Lasure died shortly thereafter. A medical examination of Lasure's body found a single gunshot wound that entered at the neck and passed through the chest. Dr. Carl Schmidt, the forensic pathologist that performed the examination on Lasure's body, testified that this wound was the cause of death. Schmidt stated that there was no evidence of a close-range firing, which is considered to be a shot fired within two feet of the skin. Schmidt did not recover a bullet from the body.

After a five-day trial that included eyewitness testimony of Phillip, Howard, and Abbott, the jury found Jones guilty on all five counts.[2] In a post-conviction motion, defense argued that a *Ginther* hearing was necessary to determine whether trial counsel was ineffective for failing to produce as a witness a woman named Henrietta Shufford,[7] who lived on Mark Twain. Jones submitted an affidavit purporting to summarize the contents of the actual police statement Shufford made to Sergeant David Moore, although the actual report was never offered to the trial court and neither Shufford nor Moore provided an affidavit of their own.

According to Jones' affidavit, Shufford told Moore that as she was leaving her residence on 8616 Mark Twain Road between 10:30 and 11:00 p.m. on the night of the shooting, she saw a man in a truck facing southbound at the corner of Mark Twain and Joy Road. The driver was talking to two men, one of whom was standing on the passenger side of the truck while the other was on the driver's side. She saw two more men standing on the corner of Mark Twain and Joy

---

[2] The trial court subsequently sentenced Petitioner to life imprisonment on the murder conviction, concurrent terms of 45 to 75 years imprisonment on the armed robbery and conspiracy convictions, a concurrent term of 3 to 10 years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

[7] Brief references were made at trial to a woman named Henrietta Shepherd; however, because there was no substantive testimony by or about this woman, it is neither clear nor relevant whether Shepherd and Shufford are the same person.

3

> Road. She said the man standing by the driver's side started shooting at Lasure, and she heard three or four gunshots. She said that Lasure drove southbound on Mark Twain, then struck a tree. Jones maintains that this testimony indicated that there was a second shooting after Jones shot at Lasure but before Lasure crashed into the tree, giving rise to the possibility that he did not fire the bullet that killed Lasure.
>
> Jones also maintained that counsel failed to investigate the impact scene of the accident in order to determine whether Lasure crashed into the tree while heading north, as the trial testimony indicated, or south, as Shufford's statement allegedly indicated. Jones further argued that counsel failed to follow up on the evidence report, which indicated that a spent bullet had been recovered and was in the evidence room. During discovery, the prosecutor did not produce any documentation on the slug and failed to produce any information about what caliber of slug it was. The trial testimony indicated that Jones shot Lasure with a .38. The defense suggested that the characteristics of the recovered slug were inconsistent with the prosecutor's theory, and might have further substantiated a second shooting.
>
> The prosecution responded that even if everything the defense counsel claimed was true, the prejudice prong of the ineffective assistance of counsel claim still would not be met in light of the clear evidence of Jones' guilt. After hearing oral arguments and reading the defense's brief, the trial court denied both a *Ginther* hearing and new trial.

*People v. Jones*, 2003 WL 22138013, *1-3 (Mich. App. Sept. 16, 2003) (footnote 7 in original text).

Petitioner, through counsel, thereafter filed an appeal as of right with the Michigan Court of Appeals, asserting that trial counsel was ineffective for failing to call a witness and for failing to analyze the evidence presented at trial. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Jones*, 2003 WL 22138013 (Mich. App. Sept. 16, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issues, which was denied. *People v. Jones*, 469 Mich. 1025, 679 N.W.2d 61 (2004).

4

Petitioner subsequently filed the present habeas petition, asserting the same ineffective assistance of counsel claims presented to the Michigan courts on direct appeal of his convictions. Respondent has filed an answer to the petition, asserting that it should be denied for lack of merit. Petitioner has filed a reply to that answer.

### III.     Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see*

also *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only

with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to call a witness for the defense and for failing to analyze the evidence presented at trial. Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim

7

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

In this case, the Michigan Court of Appeals determined that Petitioner was not denied the effective assistance of counsel at trial under the standard set forth in *Strickland, supra*. The court reasoned as follows:

> To establish ineffective assistance of counsel, defendant must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and that, but for counsel's error, it is reasonably probable that the outcome would have been different. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To show an objectively unreasonable performance, defendant must prove that counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." In so doing, defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. Defendant must also show that the proceedings were "fundamentally unfair or unreliable."
>
> C. Failure To Call Witness
>
> Jones argues that trial counsel's failure to call Henrietta Shufford as a witness amounted to ineffective assistance of counsel. Jones asserts that Shufford gave a statement to Sergeant David Moore in which she claimed to have seen a shooting take place on Mark Twain as she was leaving her home on that street. However, neither Shufford's statement itself nor an affidavit from Shufford or Moore confirming this representation of her likely testimony appears in the trial court record. Instead, Jones offers an affidavit containing his own representation of the contents of Shufford's statement to Moore. The affidavit does not indicate when, where, or even if Jones himself saw Shufford's statement. This is not sufficient to demonstrate a mistake apparent from the record.
>
> Further, counsel's decision not to call witnesses is presumed to be trial strategy, and ineffective assistance of counsel can take the form of failure to call witnesses only if the failure deprives the defendant of a substantial defense. A defense is substantial if it might have made a difference in the outcome of the trial. In this

8

case, at least three witnesses testified that they saw Jones fire twice at close range into the driver's side window of Lasure's Bronco as he sat in it. In addition, Lasure told an officer that Jones shot him. The autopsy indicated that Lasure suffered only one bullet wound. In light of this evidence, even if Shufford had testified that she witnessed a shooting on Mark Twain, it is unlikely to have made a difference in the outcome of the trial. For these reasons, we conclude that Jones failed to establish that his counsel was ineffective for failing to call Shufford.

### D. Failure To Analyze Evidence

The remainder of Jones' argument on appeal focuses on the fact that Lasure could not have told the officer that "Morgan shot me" because Lasure did not know Jones, and could not have identified him by name. Jones argues that counsel was ineffective for failing to pursue this line of reasoning. Apart from being unpreserved, this argument fails on the merits. Trial testimony indicated that Lasure was standing behind Howard when Howard addressed Jones by his first name shortly before the shooting occurred. Thus, even if Lasure did not know who Jones was before the incident, he had the opportunity to learn his name before he identified Jones as the shooter.

Affirmed.

*Jones*, 2003 WL 22138013 at *3-4 (footnotes of case citations omitted).

Having reviewed the matter, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application of well-established federal law or the facts.

Petitioner first asserts that trial counsel was ineffective for failing to call Henrietta Shufford as a witness for the defense. "Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004). The record indicates that trial counsel investigated the case, reviewed the

9

potential evidence, was aware of the witnesses' statements, and elected to proceed without calling Henrietta Shufford as a witness. Petitioner has not rebutted the presumption that this course of conduct was sound trial strategy.

Further, even if trial counsel erred in failing to present Shufford as a witness, counsel's conduct did not deprive Petitioner of a substantial defense. The dying victim told a police officer that Petitioner shot him.[3] Three other witnesses familiar with the parties involved in the incident testified that they saw Petitioner fire twice at the victim while the victim was in his car. Given the nature of the evidence against Petitioner, it is unlikely that Shufford's testimony would have affected the outcome at trial. The Court cannot conclude that trial counsel's conduct fell below that of a reasonably competent attorney. The fact that counsel's strategy was

---

[3]The Court notes that the admission of this testimony presents a Sixth Amendment issue. In *Crawford v. Washington*, 541 U.S. 36, 59-68 (2004), the United States Supreme Court held that out-of-court statements which are testimonial in nature are barred by the Confrontation Clause of the Sixth Amendment if the declarant is unavailable at trial and the defendant did not have a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. The Supreme Court, however, indicated that dying declarations may be an historical exception to this rule. *Id.* at 56 n. 6. Further, the Supreme Court confirmed that the rule of forfeiture by wrongdoing, *i.e.*, that a defendant may not benefit from his wrongful prevention of a witness's future testimony, extinguishes confrontation claims on equitable grounds. *Id.* at 62; *see* Mich. R. Evid. 804(b)(6). Following *Crawford*, two federal courts which have considered the issue have declined to find a Confrontation Clause exception for dying declarations. *See United States v. Mayhew*, 380 F. Supp. 2d 961, 965-66 (S.D. Ohio 2005); *United States v. Jordan*, No. 04-CR-229-B, 2005 WL 513501, *3 (D. Colo. March 3, 2005). However, several courts, including the United States Court of Appeals for the Sixth Circuit, have recognized the continuing viability of forfeiture by wrongdoing doctrine. *See, e.g., United States v. Garcia-Meza*, 403 F.3d 364, 370 (6th Cir. 2004) (upholding admission of murder victim's police statement about defendant's prior abuse); *Mayhew*, 380 F. Supp. 2d at 966-68 (admitting victim's dying declaration); *People v. Bauder*, No. 256186, _ N.W.2d _, 2005 WL 3357917, *5 (Mich. App. Dec. 8, 2005) (citing *Garcia-Meza* and upholding admission of murder victim's statements). In addition, given the Supreme Court's observations about the survival of the dying declaration exception, even where such statements are testimonial, such statements as those made here clearly do not satisfy the very stringent standards established by § 2254(d) of AEDPA for habeas relief. In any event, Petitioner has not raised a confrontation issue and the Court need not rule upon the issue in resolving his habeas action.

ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has not demonstrated that counsel was deficient and/or that he was prejudiced by trial counsel's conduct under the standard set forth in *Strickland, supra*. Habeas relief is not warranted on this issue.

Petitioner also claims that counsel was ineffective for failing to analyze the evidence at trial. Petitioner asserts that counsel should have argued that the victim could not have told the police officer that "Morgan shot me" because the victim did not know Petitioner. As noted by the Michigan Court of Appeals, however, the trial testimony indicated that the victim was standing by Markeith Howard when Howard addressed Petitioner by name before the shooting. Given such testimony, trial counsel may have reasonably decided not to make the argument advocated by Petitioner.

Petitioner also seems to assert that counsel should have investigated in which direction the victim's truck was facing when it hit the tree and that counsel should have further investigated the slug recovered from the victim. Petitioner, however, has not shown that the truck was facing a different direction than indicated by the trial witnesses. Further, the parties stipulated at trial that a recovered slug was either a .38 caliber or a .357 caliber damaged spent lead bullet. Petitioner has not shown that any other bullets were recovered and available to the defense for analysis. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer*

11

*v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). The Court finds that Petitioner has failed to establish that trial counsel was deficient and/or that he was prejudiced by counsel's conduct under the standard set forth in *Strickland, supra*. Habeas relief is not warranted on this issue.

## V. Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the ineffective assistance of counsel claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

_____
GERALD E. ROSEN
UNITED STATES DISTRICT JUDGE

DATED: MAY 23 2006